(No. 40166.—

EDWARD J. SCHULENBURG *et al.,* Appellees, *vs.* SIGNATROL, INC., *et al.,* Appellants.

*Opinion filed May 18, 1967.*

HORACE E. GUNN and WILLIAM R. KESLER, of Danville, and OWEN RALL, of Chicago, (GUNN, HICKMAN, KESLER & JENKINS, and PETERSON, LOWRY, RALL, BARBER & Ross, of counsel,) for appellants.

ACTON, BALDWIN, BOOKWALTER & MEYER, of Danville, and HORACE A. YOUNG, of Chicago, (D. S. BALDWIN, of counsel,) for appellees.

Mr. JUSTICE WARD delivered the opinion of the court:

This case arises from this court's decision in *Schulenburg* v. *Signatrol, Inc.,* 33 Ill.2d 379. It will be helpful to review briefly that matter in order to facilitate understanding of the issues presented here.

Time-O-Matic Corporation, a plaintiff, is engaged in the production and sale of flashers. A flasher is a device which actuates and regulates the lights in electric signs in such a manner as to animate the sign according to a predetermined program. The individual defendants, while

employed by the Time-O-Matic Corporation, traced or memorized confidential particularized information relating to Time-O-Matic's flashers which appeared in certain of Time-O-Matic's blue prints and drawings. Subsequently, Signatrol, Inc., a defendant, was formed by several of the individual defendants who, no longer employed by Time-O-Matic, then used the particularized plans and processes clandestinely obtained to reproduce, and enter competition with, the Time-O-Matic flasher. A suit was instituted by Time-O-Matic and the other plaintiffs for an injunction and other relief in the circuit court of Vermilion County, and after lengthy proceedings this court affirmed the trial and appellate courts' determinations that the defendants had wrongfully appropriated the plaintiffs' trade secrets by memorizing or copying the blue prints and drawings. Also, we upheld the injunction which *inter alia* restrained the defendants from producing a designated flasher manufactured by plaintiffs or any substantially similar flasher. However, the injunction that the trial court had issued on June 14, 1963, and which had been stayed pending appeal, was unlimited so far as duration was concerned. Since we determined, and it was conceded, that competitors could legally copy plaintiff's flasher from the product itself (as distinguished from confidential blue prints and drawings) we remanded the cause, for modification of the injunction, to the circuit court of Vermilion County, directing it to determine the period of time which would be reasonably required by the defendants to copy and produce the flasher by lawful means. The circuit court was also directed to consider the question of damages.

After conducting a hearing, the trial court on July 5, 1966, held that 18 months would be reasonably required for duplication of plaintiffs' flashers by lawful means. Accordingly, the injunction which became operative April 7, 1966, the date of the first hearing by the trial court under this court's mandate, is to expire October 7, 1967. Mean-

while, the plaintiffs on June 16, 1966, had filed in the trial court a petition for a rule on defendants to show cause. After a hearing was held on such petition the trial court ruled on July 21, 1966, that the manufacture and sale by the defendants of their flasher Model 32 (as distinguished from defendants' Model 30 which was the primary subject of the original suit and injunction) was in violation of the terms and spirit of the original injunction. Hence, the defendants were held in contempt of court and fines ranging from $25 to $500 were imposed upon the defendants. Defendants appealed both causes to the Appellate Court for the Fourth District. On September 15, 1966, upon motion by the defendants, we ordered that these appeals be taken directly to this court under our former Rule 28—1E. The appeals of the defendants from the order setting the injunction's duration at 18 months and from the order holding the defendants in contempt have been consolidated for opinion.

The defendants contend that the trial court's adjudging that 18 months would be required to reproduce lawfully the plaintiffs' flasher was manifestly against the weight of the evidence; that the trial judge failed to follow impartially the mandate of this court; and that the trial court's finding that the defendants' flasher Model 32 was substantially similar to the models specified in the injunction order was contrary to the manifest weight of the evidence and improperly deprives the defendants of the right to produce any type of motor driven, cam-operated, silver contact electric flashers.

In our original opinion we issued the following direction: "Since the original injunction has been stayed pending the determination of this appeal, we believe that justice will be served upon remand by an order of the trial court ordering the enforcement of the original injunction pending a prompt determination of the period of time required for reproduction of the flashers by lawful means. The in-

junction should then be modified to terminate upon the expiration of such time period." (33 Ill.2d at 388.) As stated, the trial court determined that it would take 18 months to reproduce the flashers by lawful means.

Although a trial court's holding is always subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Brown* v. *Zimmerman,* 18 Ill.2d 94, 102; *Illinois Nat. Bank & Trust Co. of Rockford* v. *County of Winnebago,* 19 Ill.2d 487, 495; *Mortell* v. *Beckman,* 16 Ill.2d 209.) Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different·conclusion.

Here, after remand, the trial judge was confronted with the difficult task of ascertaining the time required to reproduce the flasher by lawful means. The flasher reproduction process includes many steps of a technical nature which had to be considered. These steps include dismantling the flasher; analyzing the parts as to dimension, metallurgical content, *etc.*; making sketches and drawings of each part; building, testing, adjusting and correcting the prototype; adjusting the drawings and sending them to vendors for procurement of parts for the flasher; making manufacturing test runs, *etc.* In addition, the flasher reproduction process consists of many intangible and unpredictable factors which render a precise time calculation most difficult. For example, the record discloses that once an operable flasher has been produced and the flasher is subjected to widespread con-

sumer use, previously undiscovered flaws often emerge. This would necessitate further refinements through painstaking trial and error before the product could attain and duplicate the high quality and efficiency of plaintiffs' flasher.

Having such considerations before him, the trial judge conducted an extensive hearing in which the plaintiffs presented one witness and the defendants four witnesses. The trial judge actively participated in the examination of the witnesses. The evidence was undisputed that the defendants through the improper usage of plaintiffs' trade secrets were able to reproduce plaintiffs' flasher Model 3 in 4 months. Other evidence adduced at the hearing was conflicting. Edward Schulenburg, a plaintiff, who has been engaged in the engineering and development of flasher devices since 1927, testified as to the time required in his judgment for each step in the flasher reproduction process. His opinion as to the total time required for reproduction of plaintiffs' flasher was 30 months, after excluding, as the trial judge did in his memorandum opinion, Schulenburg's time estimates of extraneous factors such as investigating market conditions.

Lester Piper, a flasher distributor and defendant's first witness, testified that he had hired an industrial testing laboratory to disassemble and make drawings of one of defendants' flashers. But he didn't offer any opinion as to the time necessary to duplicate plaintiffs' flasher. Allen Sigel, a chemical engineer and director of the industrial testing laboratory, testified that at Piper's request he and his firm had dismantled one of plaintiffs' flashers and analyzed and made drawings of several of the parts. He stated that it took about 2 weeks working time to do this. However, the drawings were somewhat incomplete and Sigel didn't attempt other phases of the flasher reproduction process so as to determine whether the drawings could form the basis of an operable flasher. John Sutphin, a de-

fendant and president of Signatrol corporation, stated his opinion to be that 4 months would be needed to reproduce plaintiffs' flasher.

The defendants' most important witness was probably Bruce McNeil who was formerly associated with the Minnesota firm referred to in our earlier opinion and who had participated in the development of a flasher competing with that of the plaintiffs. The defendants argue that a period of 6 months or less should have been determined to have been the time for reproduction by lawful means and that the trial judge should have rejected Schulenburg's testimony in its entirety because of his interest and should have accepted *in toto* the testimony of disinterested witnesses such as McNeil. However, McNeil's testimony was not entirely certain and without qualification. He testified on direct examination that the duplication of the plaintiffs' flashers would take 6 months for a first draft in the normal course of business. However, McNeil admitted on cross-examination that after the flashers had been in service for the first year or two there had been difficulties and some complaints from users and "more than you would expect." Also, McNeil stated on direct examination that his firm had actually produced two flasher models consecutively in a period of 15 months but said on cross-examination that a period from March 1955 (the time of their first industry survey) until June 1957, or about 27 months, was required before these flasher models were able to be made commercially competitive with the plaintiffs' flasher.

The trial judge may have given considerable weight to Schulenburg's testimony in making his determination but he did recognize and consider, as stated in his memorandum opinion, the interest and possible bias of Schulenburg and the court declared his time estimate was somewhat excessive.

In light of the conflicting evidence here relating to a complex factual question we cannot say the trial court acted

unreasonably in not adopting entirely the evidence of one side or the other. The finding and judgment of the trial court that 18 months would reasonably be required to reproduce lawfully the plaintiffs' flasher cannot be said to have been against the manifest weight of the evidence.

This court in its prior opinion remanded, as has been stated, with directions that the trial court consider the question of damages and determine the period of time reasonably required for the defendants to reproduce lawfully the plaintiffs' flasher and we stated that the duration of the injunction should be limited to such period of time. The trial court found and ordered that such a reasonable period of time would be 18 months. Although the trial court in its opinion stated firmly and unmistakably its determination that paragraphs 4 and 5 of the original injunction were to remain in effect perpetually, it would appear the order itself makes no reference to this determination to extend the restraint of paragraphs 4 and 5 beyond 18 months. Paragraphs 4 and 5, in substance, had restrained the defendants from using any information improperly obtained from the plaintiffs. Under these circumstances we deem it appropriate to restate our expression in *Thomas* v. *Durchslag*, 410 Ill. 363: "Where a judgment is reversed by an appellate court, the judgment of that court is final upon all questions decided and those questions are no longer open to consideration. The court to which a cause is remanded can take only such proceedings as conform to the judgment of the appellate tribunal."

Here, the cause was remanded for the court to consider the question of damages and to determine the period of time described. There were no other questions open to consideration by the trial court.

We are sensitive to the feelings which motivated the trial court to determine to perpetuate this particular restraint but we are persuaded that such restraint should be limited to the general period of injunction. In *Winston Re-*

*search Corp.* v. *Minnesota Mining & Mfg. Co.,* (9th cir.) 350 F.2d 134, acting on a similar factual situation, the United States Court of Appeals for the Ninth Circuit considered some of the questions of public and private interest which arise from the improper use of trade secrets, including the question of permanency of restraint. The trial court had decreed an injunction period which competitors would require after public disclosure of the trade secrets to develop a competitive machine. One party had contended that no injunction should issue and the other had argued that the injunction should be perpetual. The court approved the trial court's having rejected both extremes and its having granted an injunction for a period it concluded would be sufficient both to deny the offending employees unjust enrichment and to protect the employer offended from avoidable injury.

After conducting a hearing on plaintiffs' petition for a rule on defendant to show cause the trial judge ruled that the defendants were in contempt of court because the production and sale of their Model 32 flasher were in violation of the original injunction which restrained production and sale of the defendants' Model 30 or any flasher substantially similar. The trial court imposed fines against the defendants ranging from $25 to $500. The defendants filed a notice of appeal from this judgment in the trial court on August 18, 1966. Rather than filing a supersedeas bond to stay enforcement of the trial court's order, on August 23, 1966, the defendants paid the fines. At the same time the defendants filed written notice with the clerk of the court that they were making payments under protest pending their appeal. The defendants state that they paid the fines rather than risk the issuance of an execution for their collection and its being levied. The plaintiffs contend, in their brief and by separate motion, that because the defendants paid the fines, instead of filing a supersedeas bond, the appeal is moot and should be dismissed. This contention is untenable. Sec-

tion 76(2) of the Civil Practice Act provides that "An appeal is perfected when the notice of appeal is filed in the lower court. * * * and no step other than that by which the appeal is perfected is jurisdictional." (Ill. Rev. Stat. 1965, chap. 110, par. 76(2).) Thus, filing a supersedeas bond is not a requisite to perfection of an appeal, nor is the failure so to file jurisdictional. Also, this court has said that the right to appeal is not destroyed by electing to pay the judgment since "It is not reasonable to suppose that the legislature intended that a judgment or decree for the payment of money should, upon its enforcement by execution or otherwise, in the absence of a supersedeas pending an appeal, become final and no longer subject to review, so as to require the dismissal of the pending appeal, notwithstanding provision is expressly made for the prosecution of an appeal without supersedeas." (*First Nat. Bank of Jonesboro* v. *Road District No. 8,* 389 Ill. 156, 161.) Too, an actual controversy continued to be involved, as the issue giving rise to the contempt proceeding still existed despite payment of the fines, *viz.,* whether the manufacture and sale by defendants of flasher Model 32 violates the original injunctive decree. The contempt order deters the defendants from producing and selling this type of flasher for the duration of the injunction unless they invite further contempt proceedings by persisting in its production and sale.

The defendants maintain that the trial court's finding that their flasher Model 32 was substantially similar to plaintiffs' Model 3 and defendants' Model 30, and in violation of the original injunction, is contrary to the manifest weight of the evidence and wrongfully deprives them of the right to produce motor driven, cam-operated, silver contact electric flashers. The defendants called two witnesses and the plaintiffs one during the hearing which lasted three days. Much of the testimony was of a highly technical nature. However, the trial judge was able to examine the respective

models and their component parts as they were being referred to by the witnesses. Also, the trial judge played an active role in the hearing and participated extensively in the examination of .witnesses. The testimony was undisputed that the defendants' flasher Model 32 was designed after commencement of the original litigation between the parties in October, 1959, and that some of the parts were designed prior to the original injunction order of June 14, 1963. The first sales of this model were made in March or April 1966. John Sutphin, a defendant, testified that the Model 32 flasher was intended to keep the defendants to some degree in the flasher market in which it had been previously engaged without being in violation of the injunction.

Paragraph 3 of the injunctive decree provides in pertinent part that the defendants are enjoined from "The sale, manufacture, or production of flashers  *  *  *  which possess and use *any parts* which are *substantially the same* as ˙any of the parts represented in or on the following [listed] drawings or blueprints  *  *  *" of plaintiffs' flasher Model 3 and defendant's flasher Model 30. The evidence relative to whether defendants' flasher Model 32 violated this paragraph of the injunction was contradictory. Edward Schulenburg, a plaintiff, testified that seven of Model 32's parts were substantially similar to parts represented in the drawings listed in paragraph 3 of the injunction. He gave in response to the trial judge's questions, specific dimensional, metallurgical and other technical reasons for this opinion. Wendell Walker, chief design engineer of defendants' Model 32 flasher and one of the defendants enjoined in the original suit, testified that the parts contained in the Model 32 flasher, including the seven parts in issue, were not substantially similar to defendant's Model 30 and plaintiffs' flashers. He stated specific technical and other reason for this opinion.

The trial judge was able to observe the witnesses and examine the various parts and devices contemporaneously

with the testimony. He was able to propound questions and was in a position superior to a reviewing court to weigh the sharply differing testimony of qualified witnesses. It cannot be said that the finding of the trial court that the defendants' Model 32 possessed and utilized certain parts which were substantially similar to parts depicted in drawings and blueprints designated in the injunction, and otherwise violated the injunction, was contrary to the manifest weight of the evidence.

We do not deem that the defendants' argument that the trial court in effect ruled that the defendants' cannot manufacture motor-driven cam-operated silver contact flashers is valid. Paragraph 2 of the injunction enjoined the defendants from manufacturing or selling flashers substantially the same as defendants' Model 30 or plaintiffs' Model 3 by use of the same principles as are used in Models 30 and 3. The trial court denied that its contempt order prevents the defendants from manufacturing flashers. The defendants in differing say they are in the position of a bicycle manufacturer who is told he is free to manufacture a bicycle so long as it does not have a wheel. We do not agree. Though in testimony there appeared to be some confusion concerning "principles" the intendment of the paragraph was to restrain the inequitable production or sale of flashers substantially the same as Models 30 and 3. It simply enlarges on paragraph 1 of the injunction, which restrained the production or sale of defendants' Model 30 or any substantially similar flasher. The defendants were free to produce and sell motor-driven, cam-operated, silver contact flashers so long as the end product and parts thereof were not substantially similar to Models 3 and 30, but, as the trial court stated, "they shall not manufacture plaintiffs' products by use of plaintiffs' trade secrets so unlawfully obtained." The trial court's finding and judgment that the defendants' flasher Model 32 was substantially similar to Models 30 and 3 and violative of the original injunction is not manifestly

against the weight of the evidence and should be affirmed.

The judgments of the trial court holding defendants in contempt and fixing the period of the injunction at 18 months are affirmed.

*Judgments affirmed.*