38

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH DOCKERY *et al.*, Defendants-Appellants.

(Nos. 55238, 55239, 53240 cons.;

First District—December 1, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. No-

velle and George Pappas, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The defendants, Joseph, Jimmie, and Carl Dockery were indicted for attempted murder and aggravated battery. At a bench trial in the circuit court of Cook County they were found guilty of attempted murder. Defendant Jimmie Dockery was sentenced to five years' probation, and defendants Joseph and Carl Dockery were sentenced to terms of two to five years in the Illinois State Penitentiary. All defendants appeal.

On August 30, 1969, at about 6:30 in the evening, the complainant, Larry McHerron, his uncle, Jerry McHerron, and several others were near 2840 South State Street in the City of Chicago, engaged in a dice game. Jerry McHerron testified that while the game was in progress Carl Dockery approached them with a shotgun and ordered them to stay where they were. He stated Larry McHerron ran toward the building located at 2840 South State, when he was confronted by Joseph Dockery who displayed a hand gun. Joseph then told him to get on his knees. He stooped down and leaned against a fence. Jerry McHerron testified that Larry's hands went up in the air, and then a shot rang out from the gun in Joseph Dockery's hand.

Larry McHerron testified that as he leaned against the fence, he turned to see Jimmie Dockery come out of the building holding chains and a knife. He stated that as he turned the gun went off, he fell to the ground and was hit with the chains by Jimmie Dockery.

The day previous to the incident Larry McHerron and Jimmie Dockery had a fight over money Larry owed to Jimmie. Jimmie testified he had nine stitches in his head as a result of the fight.

Joseph Dockery testified he went looking for Larry McHerron after he saw his brother Jimmie at the hospital. He said he wanted to find out what happened, not to avenge his brother, that he wasn't upset over what happened to him. He stated Larry came running toward him with a knife in his hand. He then pulled out a blank pistol he had in his pocket and told him to halt. When Jimmie burst through the door, Larry "jumped up scared" and the pistol went off. He denied Jimmie had a knife or chains in his hands and denied Carl was there when the gun went off. However, he admitted he saw Carl about fifteen minutes after the incident.

Jimmie Dockery said he had no knife or chains in his hands and further stated he saw Larry McHerron strike his brother's hands when the gun fired.

Carl Dockery testified he had been in the area of the shooting the

previous evening and had to leave his car there because it wouldn't start. He returned in the afternoon of the 30th to attempt to start it. He denied owning a shotgun and said his uncle, a mechanic, was able to fix his car but was arrested when he attempted to drive it away.

Detective Farley Miles, who investigated the shooting, went to Mercy Hospital and talked with Larry McHerron. From there he went to 2901 South Federal and located a 1964 Plymouth registered to Carl Dockery. Over the objections of defense counsel he stated he saw another officer remove a box from the car. On the box were the words: "E. J. Korvette, one shotgun."

Dr. David Vorce testified X-rays showed metal in the left parietal region of the victim's head. It was his opinion the metallic substance was the result of a bullet wound.

The defendants first complain that the common law record errone-ously indicated they were found guilty of both attempted murder and aggravated battery when, in fact, the judge found them guilty only of attempted murder. The State concedes the error.

■■■ Secondly, the defendants maintain it was error to admit the shotgun box into evidence, because it was recovered as the result of an illegal search. To support their contention they rely on *Chimel v. California*, 395 U.S. 752, and *Preston v. United States*, 376 U.S. 364. How-ever, the facts in both of those cases are distinguishable from the case at bar. *Chimel* involved the warrantless search of a house after the arrest of the defendant in the house. In the case at bar the search of a car is in issue. Automobiles, because of their mobility, may be searched upon facts not justifying a warrantless search of a house. It is only necessary that the officers conducting the search "have reasonable or probable cause" to believe they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search. *Dyke v. Taylor Implement Co.*, 391 U.S. 216; *Chambers v. Maroney*, 399 U.S. 42.

*Preston v. United States* involves an automobile, but the court held the reason for the arrest of the defendants (vagrancy) did not give the police probable cause to believe that any other crime had been com-mitted, therefore, searching the car without a warrant was a violation of the defendants' constitutional rights.

In the case at bar the officers knew the names of the individuals accused of the crime and were able to determine that the car, parked near the scene of the crime, belonged to one of them. Since they also knew that both a shotgun and pistol had been used to perpetrate the crime, sufficient probable cause existed to search the vehicle.

In *Chambers v. Moroney*, 399 U.S. 42, the court said:

"Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants alerted, and the car's contents may never be found again if a warrant must be obtained. Hence, an immediate search is constitutionally permissible.

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained. * * * For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause, either course is reasonable under the Fourth Amendment."

Although in the case before us the car was parked on the street, and in the case just cited the car was being driven on the open highway by the defendants, the same exigencies are nevertheless present. In the recent case of *Coolidge v. New Hampshire,* 403 U.S. 443, the Supreme Court held that a car parked in the defendant's driveway could not be searched without a warrant when the defendant had been under suspicion for several weeks and had ample opportunity to destroy any evidence he thought incriminating. The court concluded:

"And surely there is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States*—no alerted criminal bent on flight, no fleeing opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant.'"

Here, the meaning and purpose of the rule of *Carroll* is applicable because there was danger that the evidence would be destroyed if it were not obtained immediately. There were several defendants who might try to flee in the car, there was a "confederate," an uncle, who tried to move the car, and there were weapons to be found. Therefore, even though the defendants were not arrested in the car, there was probable cause to believe that an instrumentality of the crime might be found in the car, and there was danger the evidence could be moved and destroyed.

Thirdly, the defendants contend they were not proved guilty of attempted murder beyond a reasonable doubt because the prosecution

failed to establish the bullet was inflicted with an intent to kill and there were sufficient contradictions in the testimony of the witnesses to raise a serious doubt of the defendants' guilt.

Jerry McHerron said he saw Larry's hands go up just before Larry was shot, but he did not know if Larry's hands hit Joseph Dockery. Jimmie Dockery said he saw Larry's hands go up and hit Joseph's hands just when the gun discharged. Joseph testified that when his brother Jimmie burst through the door, Larry jumped up, and the gun accidentally discharged. The defendants conclude this testimony establishes an accidental shooting.

The other circumstances indicate it was the intention of the defendants to do substantial harm to Larry McHerron. Jerry and Larry McHerron both testified that both Joseph and Carl Dockery arrived on the scene armed with weapons. Joseph said his weapon was nothing more than a starter pistol, but there was testimony to the contrary, and the X-rays of Larry's head disclosed the presence of metal, which in Dr. Vorce's opinion was a fragment from a bullet. Although Carl Dockery denied being at the scene of the shooting and denied owning a shotgun, the testimony of the other witnesses and the evidence taken from his car suggest otherwise. Finally, there is the testimony of the victim, Larry McHerron, that he did not touch Joseph's hands when the gun went off.

The defendants suggest three places Larry McHerron contradicted himself, and a fourth situation in which he was contradicted by the investigating officer, Farley Miles:

1) On direct examination he testified that a day prior to the occurrence he had a fight with one of the defendants, Jimmie Dockery, but that he had not beaten him up. At the preliminary hearing held on September 16th he admitted that he had in fact beaten up Jimmie Dockery.

2) On direct examination the complainant testified that when he saw Carl Dockery, he ran toward the building at 2840 South State Street but did not enter. At the hearing he testified he ran through the building.

3) The complainant testified on direct examination that when approached by Joseph Dockery he refused to lie down as requested and backed up and leaned against the fence. At the hearing he stated that Joseph Dockery put his face in the ground and that he laid down by the fence.

4) The complainant's testimony at trial was that Carl Dockery was armed with a shotgun and Jimmie had chains. A police report of Farley Miles stated Larry McHerron informed him that Jimmie had a shotgun and Carl had chains.

■■ The apparent contradictions of the first three items are not crucial

and do not destroy the credibility of the complainant, but only affect the weight to be given his testimony. (*People v. Clay* (1963), 27 Ill.2d 27.) Point four is suspect because the complainant was never asked whether he related the facts as contained in the document. The discrepancy may be the result of an error by the police officer when he prepared the report.

■■ The trial judge heard all the testimony, including the four points listed above. He believed the complainant, and there is evidence to support the judgment. In *People v. Taylor* (1968), 95 Ill.App.2d 130, the court quoted *Schulenburg v. Signatrol, Inc.*, 37 Ill.2d 352, at page 356:

"Although a trial court's holding is always subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (Citations.) Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different conclusion."

For these reasons the judgment of the circuit court of Cook County is affirmed. Because of the error in the common-law record indicating the defendants were found guilty of aggravated battery, when in fact they were not so found, this cause is remanded to the circuit court to correct the record in that regard.

Affirmed and remanded with directions.

ADESKO, P. J., and BURMAN, J., concur.