LEYDEN FIRE PROTECTION DISTRICT, Petitioner-Appellant, v. THE
VILLAGE OF BENSENVILLE, Respondent-Appellee.

First District (1st Division)   No. 86—0006

Opinion filed December 15, 1986.

Johnson & Colmar, of Chicago (Mark V. Chester and Steven Lawson, of
counsel), for appellant.

Burke, Griffin, Chomicz & Wienke, P.C., of Chicago (George P. Harris,
Tom W. Stonecipher, and Frank M. Pawlak, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

The plaintiff, Leyden Fire Protection District (Leyden), filed a pe-
tition to prevent a large industrial park from "disconnecting" from its
fire protection services with a consequent loss in tax revenues. The
petition was filed pursuant to section 20 of "An Act in relation to fire

protection districts" (Ill. Rev. Stat. 1983, ch. 127½, par. 38). The key provisions of section 20 provide that a fire protection district may move to block a "disconnection" if it can show by a preponderance of the evidence that "the loss of assessed valuation by reason of such disconnection will impair the ability of the district to render fully adequate fire protection service to the territory remaining with the district."

The evidence presented at trial indicated that the district would lose $50,000 in revenues if the disconnection was allowed. This figure was not seriously contested as an appropriate estimate of the lost revenue. Both sides agreed that "fully adequate fire protection service" consisted of three firemen on an engine truck as an initial response. The only hotly contested issue was whether the loss of $50,000 would impair Leyden's ability to deliver three firemen as an initial response. After listening to all of the evidence, the trial court resolved conflicting testimony and concluded that Leyden had not shown "impairment" by a preponderance of the evidence.

On appeal, Leyden raises the following arguments: (1) in casting the issue, the court assumed that "disconnection" was a foregone conclusion; (2) the court applied an erroneous "reorganization" standard in determining whether Leyden had met its burden of proof; (3) the trial court's judgment is against the manifest weight of the evidence.

Leyden's first two contentions are based upon the following passage from the trial court's memorandum opinion:

"Stripped to its core, this is, as Bensenville has contended, a reorganization case. The question is: can Leyden continue to operate in the manner it has in the past while absorbing a decrease of $49,937 in revenue? If it can, it will continue to provide fully adequate fire protection services to its constituency. If it cannot continue to function in the same fashion without the revenue, it must find another way to provide an adequate level of service."

Leyden argues that the above questions frame the issues in the case based on the assumption that disconnection is a foregone conclusion. This argument is based on a misreading of the trial court's opinion. The questions posed here were *not* the issues decided by the trial court. Rather the issue was derived directly from the language of the statute, as follows:

"The issue before the Court is whether disconnection would materially impair Leyden's ability to render fully adequate fire protection service to its remaining territory."

After carefully reviewing all the testimony heard at trial, the court

concluded that Leyden had not met its burden on this issue. The court correctly considered disconnection an issue to be decided, not a foregone conclusion.

Pointing to the same passage quoted above, Leyden argues quite strenuously that the court used a "speculative and impossible-to-meet 'reorganization' standard" in deciding whether it had met its burden of proof. This passage was taken from the conclusion of the trial court's reasoning. The question merely outlined the options available to Leyden in the wake of the disconnection. The court did not mention "reorganization" until it had previously concluded that Leyden had not met its burden of proof. The decisional basis for the burden of proof question was impairment, *not* reorganization.

■ Alternatively, Leyden argues that the trial court's judgment is against the manifest weight of the evidence. A reviewing court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is "manifestly against the weight of the evidence." (*Schulenberg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624, 626.) According to *Schulenberg*, the rationale for this rule "is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof." (37 Ill. 2d 352, 356, 226 N.E.2d 624.)

The trial judge had to resolve conflicting testimony to decide this case. Leydon, on the hand, presented the testimony of Charles Pierce, a fire- and life-safety consultant who conducted a study of the structure, operations, and administration of Leyden. In addition, Leyden presented the testimony of Chief Richard R. McKeon, chief of the Leyden fire department. Their testimony indicated that under Leyden's current method of operating, it would have to discharge two full-time firefighters if it lost $50,000 in revenue. According to Pierce and McKeon, such a loss of personnel would impair Leyden's ability to deliver adequate service because two out of three shifts would have only two men on the initial response; three men is the minimum necessary for an adequate response. Furthermore, they testified that Leyden's current system was the only feasible way of providing fire protection service because of the uncertainty and unavailability of "paid-on-call" personnel.

■ On the other hand, Bensenville presented the testimony of John Campbell, a consulting engineer, and J.W. Henry Watson, an economist. The court rejected Watson's testimony, finding it to be

"unconvincing." The court, however, accepted Campbell's testimony that directly rebutted Leyden's contentions. Campbell studied a hypothetical community that was similar to Leyden in all material respects. He testified that in such a community three men on an engine was an adequate initial response. This testimony agreed with Leyden's contentions. He contradicted Leyden's contention that their current method of operation was the only way to deliver a three-man response. Indeed, he testified that Leyden's current system was one of the most expensive methods of providing fire protection service. He further testified that there are numerous less expensive configurations of personnel that could be used to provide a three-man response.

In particular, Campbell testified that other neighboring communities were using "all volunteer or paid on-call people and they were providing very effective service." Furthermore, he testified that in communities like Leyden, "there frequently has been a waiting list for the paid on-call people." While Leyden disputes the accuracy of Campbell's testimony on the availability of paid on-call personnel, this does not demonstrate that the trial court's judgment is against the manifest weight of the evidence.

Campbell also addressed the possibility of using a civilian radio dispatcher, instead of a full-time fireman as a radio dispatcher, on all three shifts. The cost savings from such a change alone would almost compensate Leyden for the lost tax revenue. We do not endorse any of these organizational alternatives and merely present them to show that the trial court's judgment was not against the manifest weight of the evidence. Given all of Campbell's testimony, the trial court had an ample basis to conclude that Leyden had not shown by a preponderance of the evidence that the loss of $50,000 would result in an impairment of service to the remainder of the district.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINLAN, P.J., and CAMPBELL, J., concur.