FREUND EQUIPMENT, INC., Plaintiff-Appellee, v. STEVEN FOX, d/b/a Gremlin Sod Farms, Defendant-Appellant.

Second District    No. 2—97—1274

Opinion filed November 13, 1998.

Dan Walker, Jr., of Cesario & Walker, of Hinsdale, for appellant.

Larry K. Johnson, of Johnson, Leahy & Mengeling, Ltd., of Woodstock, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Steven Fox, doing business as Gremlin Sod Farms, appeals the order of the circuit court of McHenry County denying his motion to quash summons. Defendant argues that (1) the trial court erred in imposing a heightened evidentiary standard to overcome the presumption of valid service; (2) regardless of the burden of proof, the court's finding of valid service was against the manifest weight of the evidence; and (3) the court erred in finding that leaving a copy of the summons and complaint in the door constituted personal service.

Plaintiff, Freund Equipment, Inc., sued defendant for breach of contract, alleging that defendant had failed to pay for "trucking services." After numerous failed attempts to serve defendant, Terry Vinsent, a licensed private investigator, filed an affidavit stating that he personally served defendant on August 27, 1997. Vinsent averred that he served defendant at 7:25 a.m. at defendant's residence, 6N965 Roosevelt "Avenue [Road]," St. Charles.

Defendant filed a special and limited appearance and a motion to quash summons. At a hearing on the motion, Vinsent testified that he attempted to serve defendant several times. He received authority to conduct surveillance of defendant's home. On August 25, 1997, Vinsent spoke to neighbors and a construction crew that was building a house across the street from defendant's. They described defendant, gave the times he would usually come and go, and said that he always drove the red vehicle. Vinsent also knew the license plate numbers of two vehicles registered to defendant.

On August 27, 1997, Vinsent saw two vehicles at defendant's house, an older model pickup truck with "Gremlin" vanity plates and a red Mustang. When Vinsent arrived at 6:40 a.m., these were the only two vehicles visible on the premises. As Vinsent approached the house, he saw a man in the driveway near the driver's side door of one

of the vehicles. Vinsent approached the man and got within 20 feet of him. When he asked for "Steven Fox," the man turned and walked away with Vinsent following him. Vinsent identified himself and attempted to describe the documents he had. The man then entered the house through an unlocked door.

Vinsent continued to speak to the man as he entered the house and could see his shadow inside. Vinsent asked the man if he would come to the door. Receiving no reply, Vinsent identified the documents he had, stated the court date, and said that he was going to attach the summons and complaint to the door, which he did.

Vinsent saw only the side of the man's face as he approached him in the driveway. However, Vinsent opined that the man was defendant based on his refusal to talk to him.

While being examined as an adverse witness by defense counsel, Vinsent was asked if he could identify defendant. He responded that a man wearing a flannel shirt and sitting in the front row of the courtroom fit defendant's description. He explained that the man merely resembled defendant. On direct examination by plaintiff's counsel, Vinsent stated that a man sitting at the table in court also looked similar to defendant's description.

Donald Prewitt testified that he was defendant's tenant at 6N965 Roosevelt Road. He had lived there about four months prior to August 27, 1997. No one lived there except Prewitt and defendant. On August 28, 1997, Prewitt had a conversation with defendant about someone serving papers. Prewitt told defendant that no one had approached him with papers, but he had found them in the door the night before.

Prewitt saw defendant going out the back door sometime between 6 and 6:30 a.m. on August 27. Defendant owned several cars but usually commuted with either a red Mustang or a red pickup.

Defendant testified that at 7:25 a.m. on August 27, 1997, he was at work in Berwyn. He usually arrived at work at about 7:15 a.m. and it took him about an hour to commute. Defendant said that he was the manager of D.J. Cigarette Outlet, which was open from 8 a.m. to 8 p.m. Defendant usually worked from 7:30 a.m. until noon.

Defendant denied being served with a summons or complaint on August 27, 1997. He denied that he spoke with anyone on that day regarding papers to be given to him. When he arrived home at about 8 p.m., he found the summons and complaint in the rear door.

Defendant owned a red Mustang and a red pickup that he kept at his residence. He usually commuted in one of those vehicles. Defendant was reluctant to answer questions about the vehicles he owned, at one point attempting to invoke his fifth amendment privilege against self-incrimination (U.S. Const., amend. V).

Defendant could not produce a payroll check stub to indicate his work schedule. The owner of D.J. Cigarette Outlet, Joseph Digiacomo, did not testify, although defendant had spoken to him a day or so before the hearing about testifying.

The trial court found that defendant had failed to meet his burden to overcome the presumption of valid service and denied the motion to quash. Defendant filed a timely notice of appeal.

■ Defendant first contends that the trial court erred in holding that he was required to prove by clear and convincing evidence that the purported service was invalid. The sheriff's return of service is *prima facie* proof of service and should not be set aside unless the return is impeached by clear and satisfactory evidence. *Four Lakes Management & Development Co. v. Brown*, 129 Ill. App. 3d 680, 683 (1984); *Mitchell v. Tatum*, 104 Ill. App. 3d 986, 988 (1982). Defendant acknowledges this general rule but argues that it should not apply where, as here, the person making the return of service is not a deputy sheriff or other law enforcement officer. He points out that a special process server, unlike the sheriff, is required to file an affidavit reciting the facts of service. 735 ILCS 5/2—203(b) (West 1996). Defendant argues that a private detective does not take an oath of office or perform official duties as a sheriff does and, in some cases, may be paid on a contingent basis, providing a motive to falsify returns. Thus, according to defendant, the presumption of validity attaching to a sheriff's return should not apply and the trial court should consider the validity of service based on the preponderance of the evidence.

In *In re Jafree*, 93 Ill. 2d 450, 455 (1982), the supreme court applied the "clear and satisfactory" evidence standard even though the service was made by an investigator of the Attorney Registration and Disciplinary Commission. In *Paul v. Ware*, 258 Ill. App. 3d 614, 617 (1994), the appellate court applied the general rule to a process server who was plaintiff's rental agent. Defendant has not cited any case holding that a lesser standard should apply where the return of service is filed by a process server who is not a deputy sheriff. The trial court did not err in holding that defendant was required to impeach the return by clear and satisfactory evidence.

■ Defendant next contends that, regardless of the evidentiary standard applied, the trial court's decision was against the manifest weight of the evidence.

Courts are required to indulge every presumption in favor of the return of service. *Mitchell*, 104 Ill. App. 3d at 988. A defendant's uncorroborated testimony that he was never served is insufficient to overcome the presumption of service. *Four Lakes Management*, 129 Ill. App. 3d at 683-84; see also *Paul*, 258 Ill. App. 3d at 617-18. Because

it is the function of the trial court to judge the credibility of the witnesses, we will not substitute our judgment for that of the trial court. *Schulenburg v. Signatrol, Inc.*, 37 Ill. 2d 352, 356 (1967).

Defendant's evidence consisted of little more than his flat denial that anyone served him with a summons and complaint on the day in question. Assuming for the sake of argument that Prewitt's testimony corroborated defendant's, the trial court still did not err by accepting Vinsent's testimony over that of defendant and Prewitt.

Defendant's testimony lacked detail and appeared to have been based more on his common practice than his specific recollection of the day in question. In addition, he was evasive on several points, casting doubt on his credibility. Prewitt's testimony was similarly vague and inconclusive. By contrast, Vinsent's testimony of the events of August 27, 1997, was clear and consistent. Admittedly, Vinsent concluded solely on the basis of circumstantial evidence that the person he attempted to serve was defendant, and he could not positively identify defendant in court. However, someone such as Vinsent who serves many people can hardly be expected to recall specifically each person with whom he comes in contact. The failure of an officer making a return to remember the service does not constitute clear and satisfactory proof that service was not made so as to impeach the return. *Marnik v. Cusack*, 317 Ill. 362, 365 (1925). Here, Vinsent recalled most of the details of the service.

This case is similar to *Whitworth v. Morgan*, 46 Ill. App. 3d 292 (1977). There, we held that defendant's self-serving testimony, and that of his wife and son, that he was never served fell short of the clear and satisfactory evidence necessary to rebut the presumption of service. *Whitworth*, 46 Ill. App. 3d at 295; see also *Four Lakes Management*, 129 Ill. App. 3d at 683-84 (uncorroborated testimony of defendant that she moved from premises three weeks before purported service insufficient to overcome return).

Defendant contends that Vinsent was unworthy of belief because his testimony was impeached on virtually every significant point. This is technically true, but in most cases his testimony was impeached only by the contrary statements of defendant and Prewitt. It is equally correct to say that defendant's and Prewitt's testimony was impeached by Vinsent's. The trial court's finding of valid service was not against the manifest weight of the evidence.

■ Finally, defendant contends that the method of service employed here, *i.e.*, placing the summons and complaint inside defendant's door, did not constitute personal service. Service may be effected on an individual "by leaving a copy of the summons with the defendant personally." 735 ILCS 5/2—203(a)(1) (West 1996). However, contrary to

defendant's assertion, no requirement exists that the process server physically place the papers in defendant's hand.

In *Hatmaker v. Hatmaker*, 337 Ill. App. 175, 181-82 (1949), the court found the service effective. The deputy went to defendant's hotel room, but defendant refused to open the door. The deputy then identified himself, said he had summonses for defendant, and slid them under the door. *Hatmaker*, 337 Ill. App. at 181-82; see also *Jafree*, 93 Ill. 2d at 455 (service sufficient where respondent said he would not accept the papers, so investigator placed them on respondent's shoulder). In *Currier v. Baldridge*, 914 F.2d 993, 995 (7th Cir. 1990), the court included Illinois among the states accepting the "general method" of placing the papers "in the general vicinity of the person to be served and announcing the nature of the papers." Given defendant's evident unwillingness to accept service, the method Vinsent employed here satisfied the statute.

The judgment of the circuit court of McHenry County is affirmed.

Affirmed.

THOMAS and HUTCHINSON, JJ., concur.