(No. 56759.—

*In re* SYED MOHAMMED JAWAID IQBAL JAFREE,
Attorney, Respondent.

*Opinion filed December 17, 1982.—Rehearing
denied January 28, 1983.*

James J. Grogan, of Chicago (John C. O'Malley, of counsel), for the Administrator of the Attorney Registration and Disciplinary Commission.

Syed M. J. Iqbal Jafree, respondent, *pro se.*

PER CURIAM: The Administrator of the Attorney Registration and Disciplinary Commission filed a three-count complaint before the Commission charging respondent, Syed Jafree, with professional misconduct. The complaint alleged that respondent instituted numerous defamatory and frivolous lawsuits, appeals and administrative actions. The Hearing Board recommended that he be disbarred, and the Review Board adopted that recommendation.

Three issues are presented for review: (1) whether this court has jurisdiction; (2) whether the Administrator proved, by clear and convincing evidence, that respondent instituted frivolous and defamatory litigation; (3) what sanction, if any, is appropriate under the circumstances of this case.

Respondent was admitted to practice law in Illinois in 1972, and shortly thereafter was appointed an assistant Attorney General for this State. His employment was terminated in 1973, at which time he filed a civil rights action against the former Attorney General, William Scott. The suit was eventually dismissed for want of prosecution. Subsequently, respondent filed a number of appeals and other lawsuits in Federal courts, naming as defendants William Scott, certain judges, lawyers, lay people, and a former President of the United States. Essentially, respondent charged defendants with employment discrimination and other civil rights violations. He sued both in his own name and on behalf of others. The suits were generally dismissed for failure to state a cause of action, failure to file pleadings within the time allowed by court, or neglecting to pay court fees or to post bond.

In 1977, this court granted the Administrator's motion for an order requiring respondent to submit to a mental examination. He refused and was suspended from the practice of law until such time as he complied with the order. Respondent eventually submitted to the examination and was permitted to resume his legal practice.

In 1979, the Commission began investigating respondent's litigation practices, and his alleged abusive and defamatory criticisms of the judiciary. A complaint was voted by the Inquiry Board in early June of 1980. On June 11, 1980, the Court of Appeals for the Seventh Circuit issued an order in Jafree v. Scott (No. 79—1231), af-

firming the district court's dismissal of respondent's civil rights complaint. In so holding, the court noted respondent's history of vexatious litigation, and concluded its order with the following statement:

"In light of [respondent's] repeated failure to conform his practice in this court to an acceptable standard, and out of our concern for the administration of justice and the public interest, we are submitting the history of Jafree's litigation in [this] court to the Illinois Attorney Registration and Disciplinary Commission for further action."

Count II of the Administrator's complaint was based upon the above order.

Following the institution of the complaint, respondent filed several suits in the Federal district court, seeking to enjoin the present disciplinary proceeding. In one of these suits, he named over 50 defendants, including members of this court, members of the Court of Appeals for the Seventh Circuit, and Federal district court judges. He also sued unnamed parties under the fictitious name "Judgeso N. Thetake." Respondent's defamatory and conclusional complaint alleged an ongoing conspiracy between the defendants to violate his constitutional rights.

Respondent also petitioned this court to dismiss the complaint and requested four days of oral argument relative to this motion. In the event we refused to dismiss the proceedings, respondent requested that a public hearing on the merits be conducted for six or seven months. He did not, however, respond to the complaint or appear at the proceedings before the Hearing Board. Consequently, and pursuant to the Administrator's motion, the allegations of the complaint were deemed admitted.

We first address the issue of whether this court has jurisdiction over the cause. Respondent raises a number of arguments, many of which are vague, irrelevant and conclusional, in support of his allegation that this court lacks jurisdiction. He initially contends that he was never served with process. The evidence indicates otherwise. An affida-

vit attesting to proof of service was filed with the Commission. John W. Stephenson, the affiant and an investigator for the Commission, stated that he served respondent with the complaint during the afternoon of January 27, 1981. He indicated that he approached respondent on a corner of Dearborn Street in Chicago and showed to him the first page of the complaint. Respondent stated that he would not accept any documents and proceeded to walk away. Stephenson followed, and attempted to convince him to accept the papers, but he refused. Eventually, Stephenson told him that he should consider himself served, and placed the documents on respondent's shoulder. The papers fell to the sidewalk and Stephenson then departed. He stated that he was unsure whether respondent retrieved the documents.

The affidavit of service should be considered *prima facie* evidence that the process was properly served. It should not be set aside unless the return has been impeached by clear and satisfactory evidence. (*Cf. Marnik v. Cusack* (1925), 317 Ill. 362, 364 (same principle with regard to a sheriff's return); see Ill. Rev. Stat. 1979, ch. 110, par. 13.2(1).) The evidence indicating a lack of service is respondent's own assertion, and his client's affidavit stating that she was with him on January 27, 1981, and that no one served him with process. (The affidavit was included in respondent's brief.) It is unclear whether this affidavit was presented to the Commission, but in any case, the hearing panel was justified in accepting as true Stephenson's affidavit. See 73 Ill. 2d R. 105(b)(1).

Further, it is interesting that respondent claims to have had no knowledge of the pending complaint, and yet he requested this court to dismiss it. He stated in a letter that he "reliably learned" a complaint was voted against him. Although the service was somewhat irregular due to respondent's conduct, we agree with the Hearing Board that, under the circumstances, the service was sufficient.

In a related contention, respondent argues that Stephenson could not properly serve him with process because he is an agent of Carl Rolewick, the Administrator. Respondent stated that "[e]xpecting Master Rolewick to effect genuine service through one of his servants is an invitation for trouble, and is like letting the fox look after the chicken coop." However, service may be made "by any person over 21 years of age not a party to the action." (73 Ill. 2d R. 105(b)(1).) Stephenson was not a party to these proceedings, and the service was in compliance with our rule.

Respondent next asserts that the court of appeals may not properly "beef" to this court regarding his conduct. He argues that the cause should have been remanded to the Federal district court for disciplinary action because his alleged misconduct occurred in the Federal courts. As noted by the Administrator, "[t]his court has the inherent power to *** discipline attorneys who have been admitted to practice before it." (*In re Mitan* (1979), 75 Ill. 2d 118, 123, *cert. denied* (1979), 444 U.S. 916, 62 L. Ed. 2d 171, 100 S. Ct. 231.) That certain instances of respondent's alleged misconduct occurred before other tribunals does not affect our power, and indeed duty, to consider the propriety of his conduct.

Respondent urges a number of other reasons why only the Federal courts may impose upon him any necessary sanctions. His arguments are generally unsupported, irrelevant and scurrilous. For example, he accuses the court of appeals of referring his misconduct to the Commission in order to avoid exposing the improper activities of Federal court judges. Respondent continually asserts that the Seventh Circuit acted in bad faith, and states that "[i]t cannot eat and keep its cakes, or talk turkey from both ends of its mouth." Other than to note the extreme impropriety of such statements, they merit no further comment.

Respondent alleges that the Administrator has acted

improperly and that such impropriety is attributable to this court. Therefore, it is urged that we lack jurisdiction to consider the cause. As with the majority of respondent's assertions, this syllogism is supported neither in the record nor the law. Respondent is obsessed with alleging the misconduct of others and says little of relevance in his own defense.

Respondent urges that it would violate his due process and first amendment rights to sanction him for filing frivolous lawsuits. He argues that the term "frivolous" is unclear, overbroad and subjective. We do not consider the word "frivolous" to be a term which is so vague and ambiguous as to deny notice of what conduct is improper. Indeed, respondent himself cites in his brief the meaning of "frivolous," as defined in the dictionary. Therefore, there is no violation of due process. Similarly, sanctioning a respondent for filing frivolous suits does not violate the first amendment. "While attorneys are not to be denied access to our courts, they will not be permitted to abuse the license and privilege to practice law by instituting groundless lawsuits ***." (*In re Sarelas* (1971), 50 Ill. 2d 87, 98, *cert. denied* (1972), 406 U.S. 968, 32 L. Ed. 2d 666, 92 S. Ct. 2412.) Respondent's other constitutional objections are also without merit.

It is next asserted that this court lacks jurisdiction because of the doctrines of *res judicata* and collateral estoppel. Apart from the question of how these doctrines might apply in disciplinary cases, they are clearly not applicable here. In this case the Administrator previously brought a petition under Rule 758 requesting this court to transfer respondent to inactive status. Pursuant to this rule, an attorney may be placed on an inactive status when he "is incapacitated from continuing to practice law by reason of *** mental disorder." (73 Ill. 2d R. 758.) Respondent argues that this court's dismissal of the petition operates as a bar to the present proceeding. However, an adjudication

on a Rule 758 petition is not the equivalent of a disciplinary action. In the latter, the issue is whether respondent has engaged in misconduct. In a Rule 758 proceeding, the action brought relates to a respondent's mental capacity to practice law. A determination respecting such capacity does not preclude a disciplinary action based on misconduct.

Finally, respondent alleges that "[t]his court lacks *** the impartiality and appearance of fairness which are necessary" to decide this cause. We find no support for these claims, and aside from various conclusional allegations, respondent points to none.

We next consider whether the Administrator proved, by clear and convincing evidence, that respondent instituted frivolous and defamatory lawsuits. Respondent argues that he filed the lawsuits in good faith, and that but for "judicial corruption" he would have prevailed. The record is replete with evidence which belies this contention. As previously noted, respondent failed to respond to the complaint after being served with process. The Commission therefore deemed the facts of the complaint as admitted. On the basis of these facts and the numerous exhibits introduced into evidence, the Commission found that respondent filed approximately 30 frivolous lawsuits, 15 groundless appeals, and numerous vexatious claims before State agencies.

A hearing panel's determination "is accorded substantially the same weight as that of any trier of fact with respect to the resolution of factual matters." (*In re Feldman* (1982), 89 Ill. 2d 7, 10, citing *In re Hopper* (1981), 85 Ill. 2d 318, 323.) The panel determined that the Administrator proved the allegations in the complaint, and we find this decision was supported by clear and convincing evidence.

We have reviewed documents, complaints, and certain lawsuits filed by respondent. In addition, the Administrator cites in his brief numerous cases which respondent concedes he instituted. For example, he sued on behalf of all

the trees in the United States to have the *forma pauperis* forms used in the Federal district court declared unconstitutional. (Financially Poor People *ex rel.* Jafree, Asian American Community Legal Aid Clinic and Trees of the United States of America v. Executive Committee of the United States District Court and the United States of America minus Jafree *et al.* (N.D. Ill.), 78 C 1815.) He filed suit against law schools seeking to have law degrees awarded to him *nunc pro tunc (e.g.,* Jafree v. University of Chicago Law School (N.D. Ill.), 77 C 3453); he sued several individuals for breaching the United States Treaty of Friendship with Pakistan (Jafree v. Price *et al.* (N.D. Ill.), 77 C 1225); and he filed a complaint against William Scott with the Pollution Control Board alleging pollution of the mind and contamination of the air with character assassination. (Jafree v. Illinois Attorney General, PCB 76—286.) It would be fruitless to recite all the cases instituted by respondent in the past nine years. Despite his protestations to the contrary, it seems clear that respondent's purpose is to harass defendants with vexatious claims. As one judge stated:

> "The court is not unaware of the multitude of abortive actions filed in recent years by plaintiff Jafree against the present defendants, especially Scott. This history of litigation cannot help but reflect on Jafree's good faith and motivations." *People ex rel. Waxman v. Herzog* (N.D. Ill. 1978), 455 F.Supp. 523, 524.

The remaining question concerns what sanction, if any, should be imposed. Our research reveals no Illinois case in which an attorney has escaped sanction for misconduct similar to that involved herein. The final responsibility for the imposition of discipline rests with this court. (*In re Hopper* (1981), 85 Ill. 2d 318, 323.) In determining the appropriate sanction, we must consider all the facts and circumstances. "Nevertheless, where the facts are similar to those in other cases, a uniform standard of discipline should be sought." *In re Feldman* (1982), 89 Ill. 2d 7, 11,

citing *In re Clayter* (1980), 78 Ill. 2d 276, 283.

It is clear that filing frivolous and defamatory lawsuits is conduct warranting disbarment. (*People ex rel. Chicago Bar Association v. Metzen* (1919), 291 Ill. 55.) This is particularly true where, as here, the respondent also manifests an abusive and offensive attitude toward the judiciary. In *Metzen*, the attorney brought one unauthorized suit against a judge, intimidated the judge, and released a story to the press concerning the suit. In disbarring the attorney, this court stated:

> "Judges are not exempt from just criticism, and whenever there is proper ground for serious complaint against a judge it is the right and duty of a lawyer to submit his grievances to the proper authorities, but the public interest and the administration of the law demand that the courts should have the confidence and respect of the people. Unjust criticism, insulting language and offensive conduct toward the judges, personally, by attorneys, who are officers of the court, which tend to bring the courts and the law into disrepute and to destroy public confidence in their integrity, cannot be permitted." 291 Ill. 55, 58.

In the instant case, it was found that respondent filed over 40 groundless lawsuits and appeals, and made numerous scurrilous and defamatory statements about the judiciary, and certain judges. In light of the result reached in *Metzen*, it would be anomalous to impose, in this case, any sanction less than disbarment. Further, the cases in which the respondent was suspended for filing frivolous lawsuits are distinguishable from the instant case.

In *People ex rel. Chicago Bar Association v. Standidge* (1928), 333 Ill. 361, the attorney instituted a suit against three appellate court judges who had previously ruled against him in a case. He charged that the judges had "wantonly" made false findings in reaching their decision. Although this was the only instance of misconduct, this court suspended the attorney from the practice of law for six months.

In *In re Mason* (1965), 33 Ill. 2d 53, an attorney instituted a suit against a judge who "restrained" him for one weekend pending a hearing on a mental illness petition. The attorney requested a reporter to print a story concerning the suit. This court found that the lawsuit was filed for the purpose of bringing the judiciary into disrepute. It was also noted that the attorney tended to engage in unconventional behavior. He was suspended for a period of one year.

The attorney in *In re Phelps* (1973), 55 Ill. 2d 319, was charged in a three-count complaint with misconduct arising out of a divorce action. Count I alleged that she filed in the appellate court a defamatory and frivolous petition charging circuit court judges with the commission of illegal acts. In count II it was charged that the attorney filed an action in the Federal district court seeking damages from certain judges and attorneys, and charging the judges with acting in a discriminatory manner. Count III alleged that the attorney filed with this court documents containing defamatory statements regarding members of the judiciary. Each of these charges arose out of one cause of action prosecuted by the attorney. This court adopted the recommendation of the Board of Governors and suspended the attorney for two years and until further order of this court.

Finally, in *In re Sarelas* (1971), 50 Ill. 2d 87, the attorney was suspended for two years and until further order of this court for filing approximately 15 frivolous lawsuits and appeals. However, the opinion emphasized that "[t]he evidence clearly warrants the disbarment of the respondent," and that "[h]e has exhibited a continuous course of conduct of the type which we have found sufficient, in a single incident, to warrant disbarment." 50 Ill. 2d 87, 98, citing *People ex rel. Chicago Bar Association v. Metzen* (1919), 291 Ill. 55.

In the instant case, respondent has practiced law in Illinois for approximately 10 years. As previously noted, he was suspended once for failing to comply with an order of

this court. He has made it clear that he refuses to recognize the authority of the Administrator and harbors extreme contempt for the judicial system and members of the judiciary. Since admittance to the bar of this State, respondent's legal career has been characterized by the filing of frivolous lawsuits and scurrilous charges. He continuously repeats irrelevant and unfounded charges against everyone whom he feels has wronged him. For example, respondent refers to the Administrator as "Rolewicked," and accuses him of tampering with his mail. He imagines that a number of judges are engaged in an ongoing conspiracy to deprive him of his rights. In a previous written request for subpoenas, which respondent included in his brief, he asserts that one judge threatened to accuse him of rape. Further, "agents" of Scott and Rolewick attempted to purchase pornographic "information" about him. He also claimed that his cases were dismissed to cover up Scott's own activities.

We cannot help but conclude that respondent is incapable of conforming his conduct to an acceptable standard. His unprofessionalism is an abuse of the privilege to practice law and clearly tends to bring the judicial system and legal profession into disrepute. Accordingly, we adopt the recommendations of the hearing panel and Review Board and order that respondent be disbarred.

*Respondent disbarred.*