In the Matter of Sayyid Mohammed Jawaid Iqbal JAFREE.

No. D–37.

United States Court of Appeals, Seventh Circuit.

Heard Oct. 17, 1984.

Decided April 8, 1985.

Sayyid Jafree, pro se.

Before CUMMINGS, Chief Judge, and ESCHBACH and POSNER, Circuit Judges.

PER CURIAM.

Respondent Sayyid Mohammed Jawaid Iqbal Jafree was licensed to practice law in the State of Illinois on February 14, 1972, and admitted to practice before this court on December 9, 1976. On September 19, 1982, the Illinois Supreme Court disbarred respondent for professional misconduct. *In re Jafree*, 93 Ill.2d 450, 67 Ill.Dec. 104, 444 N.E.2d 143 (1982). On December 30, 1982, respondent was directed to show cause why, in view of the Illinois disbar-

ment, his name should not be stricken from the roll of attorneys admitted to practice before this court. Respondent filed a timely response requesting an evidentiary hearing. By unpublished order of June 7, 1983, we denied the request for an evidentiary hearing and ordered respondent's name stricken. Rehearing was denied.

On October 3, 1983, respondent filed a motion for reinstatement citing a September 2, 1983 unpublished order of the United States Tax Court holding that the Illinois disbarment could not be given conclusive effect because of conflicting evidence as to whether respondent had received notice of the hearing before the Hearing Board of the Illinois Attorney Registration and Disciplinary Commission. The Tax Court concluded that an evidentiary hearing would be necessary to resolve the conflict and, declining to conduct such a hearing, discharged its order to show cause. On November 14, 1983, respondent filed a brief in support of his motion for reinstatement in this court. Shortly thereafter, he notified the Clerk that he would be out of the country for an extended period, and the matter was accordingly held in abeyance. On September 27, 1984, after respondent signalled his return, the court entered an order granting respondent a rehearing (thereby, under our circuit rules, vacating our June 7, 1983 disbarment order) and scheduling a (non-evidentiary) hearing for October 17, 1984.[1] Having considered respondent's arguments, we conclude that our initial disbarment decision was correct.

---

**1.** Respondent has persistently argued that he is entitled as a matter of right to a *de novo* evidentiary hearing under Rule 46(b), Fed.R.App.P., which reads as follows:

> When it is shown to the court that any member of its bar has been suspended or disbarred from practice in any other court of record, or has been guilty of conduct unbecoming a member of the bar of the court, he will be subject to suspension or disbarment by the court. The member shall be afforded an opportunity to show good cause, within such time as the court shall prescribe, why he should not be suspended or disbarred. Upon his response to the rule to show cause, and after hearing, if requested, or upon expiration of the time prescribed for a response if no

response is made, the court shall enter an appropriate order.

We have previously rejected respondent's position. It is settled law that a *de novo* evidentiary hearing is not a prerequisite where the federal court disbarment is predicated on a state disbarment that meets the due process criteria outlined in *Selling v. Radford*, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917), discussed *infra* at 608. The hearing contemplated by Rule 46(b) is in that circumstance in the nature of an oral argument on the respondent's challenge to the state proceeding under *Selling*, not an opportunity to retry the state case. Here, respondent appeared before us for approximately one and one-half hours to present his defense.

Respondent's story begins for our purposes in 1973 when his employment as an Illinois Assistant Attorney General was terminated. Represented by counsel, respondent filed in the United States District Court for the Northern District of Illinois a civil rights action against William Scott, the then Illinois Attorney General, and others, alleging that he had been fired without cause in violation of various constitutional rights. The suit was dismissed for failure to state a claim. *Jafree v. Scott*, 372 F.Supp. 264 (N.D.Ill.1974). This court by unpublished order affirmed the district court except in one narrow respect. On remand the action was dismissed for want of prosecution, and respondent's subsequent *pro se* Rule 60(b) motions to vacate were denied. The district court further denied respondent's motion for leave to appeal *in forma pauperis* on the ground that the appeal was frivolous. Respondent paid the docketing fees, and this court ruled that the appeal from the dismissal was untimely; that the dismissal was, in any event, not an abuse of discretion; and that the district court did not abuse its discretion in denying the Rule 60(b) motions. *Jafree v. Scott*, 590 F.2d 209, 211–212 (7th Cir.1978) (per curiam). We noted disapprovingly at that time the "mass of wide-ranging, often conclusory, material from Jafree by means of briefs, motions, and correspondence which can only be regarded as a counter-stigmatization program with a self-encomiastic background," 590 F.2d at 211–12, and appended a sampling thereof as an addendum, 590 F.2d at 212–14. We further took note that the record included a tabulation of " 'some sixty separate discrimination claims filed by Jafree throughout the United States against some 43 companies or institutions ... from the late 1960s to [1975].' " 590 F.2d at 215.

The above-described suit proved to be only the first of more than a half-dozen actions filed by respondent in federal district court in this circuit against Scott. In addition, from 1976 through 1979, Jafree filed numerous suits in federal court against other defendants, including area law schools and law firms, FBI employees, members or employees of the Illinois Attorney Disciplinary Commission, and the Executive Committee of the Federal District Court for the Northern District of Illinois. The complaints typically alleged conspiracy to violate respondent's civil rights and typically were dismissed for failure to state a claim, failure to prosecute, or voluntarily following a finding of frivolousness and denial of *in forma pauperis* status.[2] The dismissals produced more than a dozen appeals to this court, many of which were dismissed for failure to pay court fees, lack of prosecution or lack of jurisdiction, and a number of mandamus petitions, which were denied. Respondent's filings, as we have observed in the past, were characteristically "unlawyerlike in appearance," "prepared without regard to the appropriate rules," and "full of redundant, immaterial, impertinent or scandalous matter" including outrageous personal attacks on federal judges and state officials. *Jafree v. Northwestern University Law School, et al.*, 590 F.2d 338 (7th Cir.1979).[3]

Respondent was repeatedly admonished that continued filing of frivolous actions would not be tolerated, *see, e.g., People of Illinois ex rel. Waxman v. Herzog*, 455 F.Supp. 523, 524 (N.D.Ill.1978). In one case, this court, noting that respondent "refuses, or is unable to conduct himself according to the standards of a lawyer," taxed attorney's fees against him as a sanction, *Jafree v. Northwestern University Law School, et al.*, 590 F.2d 338 (7th Cir.1979). These warnings were, however, to no avail, and we finally ordered that the history of respondent's litigation in this

---

**2.** An extended discussion of the nature of respondent's complaints is contained in the Illinois disbarment opinion and need not be repeated here.

**3.** Respondent's filings in the present proceedings are no exception. They are in large part not proper filings at all, but letters addressed to individual judges or employees of the Court, and contain numerous improprieties and irrelevancies as well as the gross accusation that a federal judge ordered respondent's house to be burned.

court be submitted to the Administrator of the Illinois Attorney Registration and Disciplinary Commission. *Jafree v. Scott*, 624 F.2d 1105 (7th Cir.1980). *See also, In re Jafree*, 67 Ill.Dec. at 106–07, 444 N.E.2d at 145–46.

On December 10, 1980, the Administrator filed with the Hearing Board of the Disciplinary Commission a three-count complaint, [4] based in part on our June 11, 1980 order, detailing respondent's litigation in federal and state forums from 1973 to 1980 and alleging that respondent had been guilty of professional misconduct. Attached to the complaint was a notice of hearing set for February 25, 1981 at the Commission's offices in Chicago, Illinois. Respondent neither answered the complaint nor appeared at the hearing. The Hearing Board admitted into evidence an affidavit of service by John W. Stephenson, an investigator for the Commission.[5] According to the affidavit, Stephenson approached respondent on a corner of Dearborn Street in Chicago, showed him the complaint and notice of hearing, told him what the papers were, and attempted to serve him. When respondent refused to take the papers, Stephenson placed the papers on respondent's person, but respondent allowed them to fall to the sidewalk. The Board also placed in the record a copy, received by an attorney at the Commission, of respondent's letter to a former chairman of the Hearing Board in which respondent indicates that he is making a "limited appearance" for the purpose of presenting an "affidavit for relief" and requests a public hearing on the motion for "relief". The Board further noted that respondent twice called the Commission offices on the morning of the hearing, first to ask the name of the Chairman of the Hearing Board and later to inquire whether the Supreme Court had suspended William Scott. The Hearing Board concluded that personal service, although accomplished in a somewhat unusual manner, was sufficient; that respondent had filed "approximately 30 spurious, groundless, frivolous, and vexatious lawsuits," 15 groundless appeals, and "numerous other groundless and vexatious lawsuits or claims before agencies of the State;" and that respondent's conduct "was flagrantly unprofessional and notoriously brought the profession into disrepute."

The Hearing Board's Report and recommendation of disbarment were filed with the Commission's Review Board on April 7, 1981, with notice and a copy of the report mailed to respondent on the same date. The notice informed respondent that he had 21 days in which to file exceptions and to request leave to file a brief and for oral argument. Respondent made no filings. The Review Board accepted the Hearing Board's findings and recommendation and, on June 30, 1981, referred the matter for action to the Illinois Supreme Court, again with notice to respondent.

Respondent, after being granted a lengthy extension of time, filed exceptions in the Illinois Supreme Court. His principal argument was that the court lacked jurisdiction over him for want of valid personal service. Specifically, respondent charged that Stephenson's affidavit of service was a fabrication, part of a conspiracy to disbar him without a hearing, and that Stephenson was in any event not an authorized process server. He relied on his own

---

**4.** Attorney discipline in Illinois involves a multistep process, delineated by Illinois Supreme Court Rules 751–754. The duty to investigate attorney misconduct lies initially with the Administrator. The Administrator presents the results of his investigation to an Inquiry Board, which considers whether a complaint should be prepared for submission to the Hearing Board. The Hearing Board conducts hearings and makes findings of fact, conclusions of law, and a recommendation for discipline or dismissal. The Hearing Board's report and recommendation are then transmitted to a Review Board, which may accept, reject or modify the findings and conclusions before it. The Review Board's report is then filed with the Illinois Supreme Court. Contrary to respondent's assertion at the hearing in this court, there is no entitlement to a *de novo* evidentiary hearing at each step in the disciplinary process.

**5.** Stephenson was available to testify at the hearing, but the Hearing Board found the affidavit sufficient.

affidavit denying service by Stephenson and the affidavit of a former client stating that no one served respondent with process while she was with him on January 27, 1981. The state court ruled that Stephenson was authorized under Illinois law to serve process and that respondent's affidavits were insufficient to rebut the affidavit of service.[6] The court further found that the charges against respondent had been proven by clear and convincing evidence and that disbarment was the appropriate sanction.

■ Although federal disbarment does not follow automatically a state disbarment, *United States v. Theard,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957), state disbarment proceedings are entitled to great weight and should be relied on

> unless, from an intrinsic consideration of the state record, one or all of the following conditions should appear: 1, That the state procedure from want of notice or opportunity to be heard was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained to do so.

*Selling v. Radford,* 243 U.S. 46, 51, 37 S.Ct. 377, 379, 61 L.Ed. 585 (1917).

Respondent contends that we may not rely on the Illinois disbarment because there are conflicting affidavits as to whether he was personally served with the complaint and notice of the February 25, 1981 hearing. He insists that this conflict entitles him under *Selling* to an evidentiary hearing on the merits (which he estimates will last two to three months) or at the least an evidentiary hearing to resolve the conflict. Respondent is wrong. While personal service is required by Illinois procedure, it is not mandated by the due process clause, and even if we were persuaded, which we are not, that respondent's affidavit created a genuine conflict as to the sufficiency of service under Illinois law, we would be bound by the state court's ruling to the contrary. In any event, the question before this court is not whether there was personal service, but whether respondent was afforded his due process right to adequate notice of and opportunity to respond to the charges against him. We have no trouble concluding on the record before us and ignoring entirely the issue of personal service that he was.

■ To begin with, the complaint and notice of hearing filed with the Hearing Board on December 10, 1980 were served on respondent's attorney, Shelly Waxman, as well as on respondent. (Waxman, by letter of February 19, 1981, notified the Illinois Supreme Court and the Commission that he was withdrawing his representation of respondent.) In addition, respondent was served by mail on February 20, 1981 with a copy of the Administrator's motion before the Hearing Board to deem the allegations of the complaint as true because of respondent's failure to respond to them. Moreover, respondent's conduct leaves no doubt that he had actual notice of the proceedings prior to the February 25, 1981 hearing. The record shows, as we have said, that respondent wrote a "limited ap-

---

**6.** Under Illinois law, an affidavit of service constitutes prima facie evidence of proper service, and service will not be set aside unless the return is impeached by "clear and satisfactory evidence." *In re Jafree,* 93 Ill.2d 450, 67 Ill.Dec. 104, 107, 444 N.E.2d 143, 146 (1982); *Whitworth v. Morgan,* 46 Ill.App.3d 292, 4 Ill.Dec. 823, 826, 360 N.E.2d 1198, 1201 (1977). Self-serving affidavits or testimony are generally not sufficient to rebut the presumption, *see, e.g., Whitworth,* 4 Ill.Dec. at 826, 360 N.E.2d at 1201; *Hurwiss v. Silver,* 14 Ill.App.3d 388, 302 N.E.2d 428 (1973); *Kochman v. O'Neill,* 202 Ill. 110, 66 N.E. 1047 (1903), and here respondent's affidavits were not only self-serving but contradicted by his own conduct.

pearance" letter to the Commission requesting a public hearing on his "affidavit for relief" and twice called the Commission offices on the morning of the hearing. He also requested the Illinois Supreme Court to dismiss the disciplinary proceedings against him, *see In re Jafree,* 67 Ill.Dec. at 107, 444 N.E.2d at 146. Indeed, included in the appendix to respondent's brief in this court are copies of a letter and confirming telegram, both dated January 1, 1981, from respondent to Clell Woods, Clerk of the Illinois Supreme Court, demanding that the Supreme Court declare the Disciplinary Commission a "nullity" and threatening to resign his membership in the Illinois Bar for a period of five years effective Law Day 1981. Plainly, respondent knew of the pending disciplinary hearing and chose to attack it collaterally rather than defend himself.

Respondent was next given notice of the status of the proceedings in April 1981 when a copy of the Hearing Board's report and recommendation to the Review Board were mailed to him with notice of his right to file exceptions and in June 1981 when he was served with the Review Board's order adopting the Hearing Board's findings and recommendations. Respondent never filed exceptions. What he did do was file suit in federal court to enjoin the disciplinary proceedings.

Finally, the entire file in this matter was made available to respondent, at the direction of the Illinois Supreme Court, on or about December 29, 1981, and the record shows that respondent thereafter was allowed ample opportunity to defend himself. The evidence against respondent consists of course entirely of civil pleadings filed by respondent himself in federal and state courts and agencies. Thus, there are no credibility determinations or disputed factual matters at issue. Respondent made numerous legal arguments attacking the propriety of the proceedings, each of which was considered and rejected by the state court, but never denied filing the lawsuits that comprise the record or offered any plausible justification for his conduct. For this reason, we repeatedly pressed respon-

dent to articulate what he believed he had not had an opportunity to show before the state court and what he intended to prove at the lengthy evidentiary hearing he was demanding from us. Respondent's answer, as we understand it, is that he intends to subpoena the testimony of members and employees of this court and the federal district court, state judges and officials, and private individuals to prove that he is the victim of judicial corruption and conspiracy directed, at least in part, to covering up alleged wrongdoings by William Scott. This conspiracy claim, apart from being preposterous on its face, is substantially the same claim that respondent has repeatedly alleged and failed to substantiate in any part in numerous lawsuits underlying the disciplinary action itself. Due process does not require, nor will we permit, a public hearing to explore respondent's private obsession.

Respondent also argues in conclusory fashion that the state disbarment cannot be credited under *Selling* because the evidence against him is insufficient. This argument is utterly meritless. The evidence against respondent, much of it a matter of record in this court, is overwhelming. Nor do we see any "grave reason," *Selling,* 243 U.S. at 51, 37 S.Ct. at 379, not to impose disbarment as a sanction for respondent's conduct. "[T]he principles of right and justice as understood by the federal courts not only permit but in fact demand that attorneys who make unfounded defamatory accusations, ... and who thereby demonstrate a gross failure of professional judgment and character be disciplined for the protection of the public." *In re Sarelas,* 360 F.Supp. 794, 801 (N.D.Ill.1973). *See, e.g., In re Whiteside,* 386 F.2d 805 (2d Cir.1967), *cert. denied,* 391 U.S. 920, 88 S.Ct. 1804, 20 L.Ed.2d 657 (1968); *In re Grimes,* 364 F.2d 654 (10th Cir.1966), *cert. denied,* 385 U.S. 1035, 87 S.Ct. 775, 17 L.Ed.2d 682 (1967).

Respondent's name shall be stricken from the roll of attorneys admitted to practice in this court.

IT IS SO ORDERED.