NOTICE
Decision filed 11/20/23. The
text of this decision may be
changed or corrected prior to
the filing of a Petiion for
Rehearing or the disposition of
the same.

2023 IL App (5th) 220731

NO. 5-22-0731

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| HARRY STATIA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 20-LM-645 |
| | ) | |
| CHRISTINE ORLET, | ) | Honorable |
| | ) | Kevin T. Hoerner, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court, with opinion.
Justices Moore and Vaughan concurred in the judgment and opinion.

**OPINION**

¶ 1     Harry Statia appeals from the trial court's order that set aside a default judgment he obtained against Christine Orlet. At issue was whether the private process server obtained out-of-state in-person service upon Orlet. We conclude that personal service was sufficient and, therefore, the trial court had personal jurisdiction over Orlet. We reverse the court's order granting Orlet's motion pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)) and vacating the default judgment. We also find that, because we reverse the court's order granting Orlet's section 2-1401 motion, Statia's second issue on appeal—the trial court's denial of his motion to dismiss Orlet's motion to vacate—has been rendered moot. We remand for further proceedings.

1

¶ 2                                    I. Background

¶ 3    Orlet sold a residential Belleville property to Statia on March 31, 2019. However, multiple undisclosed property issues were soon discovered by Statia that resulted in a dispute with Orlet. The issues involved a chicken coop in violation of neighborhood association rules, a broken heater for the in-ground swimming pool, broken kitchen appliances, water damage from a leak, and allegedly false descriptions and advertisement of household features that formed the foundation of the property's purchase.

¶ 4    The real estate contract required the parties to first undergo mediation, which was conducted but failed to resolve their dispute. The contract then required the parties to attend arbitration with U.S. Arbitration & Mediation Midwest, Inc. Section 26 of the real estate contract provided that the arbitrator's decision "shall be final and binding and judgment entered thereon." Additionally, if a party failed to comply with the arbitrator's award, the other party would be entitled to costs of suit and reasonable attorney fees necessarily incurred to enforce the award. On April 23, 2020, Statia and Orlet participated in arbitration. At the conclusion of the hearing, the arbitrator found in favor of Statia and awarded him damages totaling $14,295. Following unsuccessful attempts to get Orlet to pay the award, Statia filed a petition to confirm the arbitration award on December 29, 2021.

¶ 5    On July 13, 2020, St. Clair County issued its initial summons to serve Orlet at a residential address in Coulterville, Randolph County, Illinois. Orlet was directed to appear in court on August 11, 2020. However, the summons was not served upon her. The licensed process server filed her notarized affidavit of nonservice dated August 10, 2020, indicating that multiple service attempts were made at that address but that the property was gated, locked, and unmowed. Neighbors were of no assistance and did not know who owned the property. The process server conducted research

2

and learned that Orlet had moved to Portland, Oregon. The trial court ordered an alias summons to be issued.

¶ 6    On August 20, 2020, an alias summons was issued that listed Orlet's address at 7330 SW 29th Ave., Portland, Oregon. James Treacy, an Oregon process server, reported that he served Orlet at 11020 N. Haight Ave., Portland, Oregon, on August 17, 2020, at 1:50 p.m. Treacy filed a nonnotarized return of service affidavit with the court on September 2, 2020, which stated: "Christine was an unwilling recipient of the paperwork and I had to drop serve her at her front storm door."

¶ 7    Orlet filed no response to Statia's petition. On October 13, 2020, the trial court entered a default judgment against Orlet in Statia's favor. Thereafter, Statia registered the foreign judgment in Oregon and sought to garnish Orlet's bank account, which was garnished on April 8, 2021. On July 6, 2021, Orlet filed a motion to vacate the judgment pursuant to section 2-1401 of the Code (*id.*). On January 12, 2022, Statia filed a motion to dismiss Orlet's motion.

¶ 8    The trial court held an evidentiary hearing in this case on July 14, 2022. Treacy, the process server, was the only person who testified. Treacy stated that, whenever he takes a file, he does basic research on the person to be served, including searching for photographs. In this case, he found photos of Orlet on an Internet site that included Orlet's two daughters. One of the daughters was identified in one photograph as Lilly. Treacy stated that prior to August 27, 2020, he had attempted to serve Orlet "[m]any times" and was not getting "anywhere." At one point, Treacy went to a neighbor's condo. The neighbor, an older white female, answered the door and stated that Christine Orlet lived next door. Eventually, Treacy was successful in getting someone to answer Orlet's door. The person who answered the door was Orlet's daughter, Lilly, who claimed not to know Orlet. Treacy explained that he recognized Lilly from the online photograph he found

3

during his investigation. Lilly informed Treacy that Orlet used to live at that address. Orlet called Treacy's office irritated that he had spoken to her daughter, Lilly. Then, Orlet advised that she had met Treacy when he was trying to make a delivery. Based upon Orlet's phone calls, Treacy became familiar with Orlet's voice. Treacy also learned that the older white woman who lived next door to Lilly was in fact Christine Orlet. On August 27, 2020, Treacy went to the address next door to Lilly's condo with the intent to serve Orlet. The front door was open with a closed screen door. Upon approaching the door, Treacy saw Orlet, and they engaged in a brief conversation. Orlet admitted that "Christine Orlet" lived there and stated that she would accept service. Treacy asked for her name, and Orlet stated that her name was Lilly. Then Orlet asked Treacy what he was attempting to deliver, and he read the title of the case. Orlet became extremely irritated upon hearing Statia's name and complained about Statia's lawsuit. Orlet would not open the screen door, and Treacy testified that he is not allowed to enter a home without permission. He confirmed that Orlet did not confirm her identity. However, he identified her as the same person appearing at the court hearing via Zoom. Ultimately Treacy told Orlet that the paperwork was important and that he was going to leave it just outside her door on the step.

¶ 9       At the conclusion of the hearing, the trial court entered an order denying Statia's motion to dismiss Orlet's motion to vacate judgment and impose sanctions, granting Orlet's motion to vacate the judgment, and denying Orlet's motion for sanctions. Statia timely appealed.

¶ 10                                      II. Analysis

¶ 11      Initially, we note that our review is limited to the order granting Orlet's section 2-1401 petition (*id.*) to vacate the default judgment. The underlying issues of the petition to confirm the arbitration award are not before us on appeal.

4

¶ 12    Orlet filed her petition pursuant to section 2-1401 because more than 30 days had passed since the default judgment had been entered against her and, thus, the default judgment was final. In a section 2-1401 petition, the primary facts "are not those which would establish the underlying action, but rather facts which are sufficient merely to support an order vacating the judgment." *Cunningham v. Miller's General Insurance Co.*, 188 Ill. App. 3d 689, 693 (1989) (citing *Manning v. Meier*, 114 Ill. App. 3d 835, 840 (1983)).

¶ 13    "To be entitled to relief under section 2-1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). The level of proof required to sustain a section 2-1401 petition is a preponderance of the evidence. *Id.* at 221 (citing *Mitchell v. Seidler*, 68 Ill. App. 3d 478, 482 (1979)). On appeal from an order granting a section 2-1401 petition on the basis that the judgment is void, our review is *de novo*. *Protein Partners, LLP v. Lincoln Provision, Inc.*, 407 Ill. App. 3d 709, 716 (2010) (citing *People v. Vincent*, 226 Ill. 2d 1, 18 (2007)).

¶ 14    We next turn to the foundation of Orlet's section 2-1401 petition—that she was not served with process and thus the court lacked personal jurisdiction over her. If a party is improperly served, any judgment that was subsequently entered is void. *Cavanaugh v. Lansing Municipal Airport*, 288 Ill. App. 3d 239, 246 (1997) (citing 735 ILCS 5/2-1401(f) (West 1994)); *Citimortgage, Inc. v. Cotton*, 2012 IL App (1st) 102438, ¶ 13 (citing *In re Marriage of Kohl*, 334 Ill. App. 3d 867, 880 (2002)). When the judgment sought to be vacated is void, section 2-1401(f) provides that the standard requirements for a section 2-1401 petition to vacate are not applicable: "Nothing contained in this Section affects any existing right to relief from a void order or

5

judgment, or to employ any existing method to procure that relief." 735 ILCS 5/2-1401(f) (West 2020).

> "[I]t is well settled that '[a] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally.' " *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002) (quoting *Barnard v. Michael*, 392 Ill. 130, 135 (1945)).

The "voidness" allegations negate and serve as a substitute for the party's "need to allege a meritorious defense and due diligence." *Id.* at 104. Therefore, the only issue that courts must address is whether the service was proper so that personal jurisdiction was attained.

¶ 15    Personal jurisdiction can only be obtained by compliance with the statutory manner of service of process. *Forest Preserve District of Cook County v. Industrial Comm'n*, 305 Ill. App. 3d 657, 663-64 (1999) (citing *Miller v. Town of Cicero*, 225 Ill. App. 3d 105, 110 (1992)). The Code provides the rules to be followed in serving a summons on an individual within or outside Illinois.

¶ 16    Section 2-203 of the Code sets forth the process and requirements of service of summons on an individual as follows:

> "(1) by leaving a copy of the summons with the defendant personally, [or] (2) by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode." 735 ILCS 5/2-203(a) (West 2020).

6

Additionally, section 2-203(b) of the Code requires the individual who made service to include specific identification details about the person served and about the place, date, and time of service in his or her affidavit or record of service:

"(1) identify as to sex, race, and approximate age the defendant or other person with whom the summons was left and (2) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant or other person." *Id.* § 2-203(b).

¶ 17 Section 2-208 of the Code provides that personal service outside Illinois may be made upon any party "who has submitted to the jurisdiction of the courts of this State." *Id.* § 2-208(a). When a person is served outside of Illinois, "it shall have the force and effect of personal service of summons within this State." *Id.* Service of process outside Illinois "shall be made in like manner as service within this State, by any person over 18 years of age not a party to the action." *Id.* § 2-208(b). The server is mandated to file an affidavit "stating the time, manner and place of service." *Id.* "The court may consider the affidavit, or any other competent proofs, in determining whether service has been properly made." *Id.*

¶ 18 A return of service for personal service is presumed valid. *Walker v. Ware*, 2013 IL App (1st) 122364, ¶ 21 (citing *Dec v. Manning*, 248 Ill. App. 3d 341, 348 (1993)). Moreover, an affidavit of service is *prima facie* evidence that process was properly served. *In re Jafree*, 93 Ill. 2d 450, 455 (1982) (*per curiam*). The return of service should not be set aside unless "the return has been impeached by clear and satisfactory evidence." *Id.*

¶ 19 We turn to the question of whether the process server, Treacy, achieved personal service of Orlet and satisfied the requirements of our Code to provide the St. Clair County circuit court with personal jurisdiction. As previously stated, section 2-208 of the Code states that service

7

outside of Illinois "shall be made in like manner" as service within Illinois. 735 ILCS 5/2-208(b) (West 2020). Here, Treacy engaged in personal service—not abode service—by leaving a copy of the summons with Orlet. Because "abode service" was not at issue, there was no requirement that Treacy "inform[ ] that person of the contents of the summons" or that Treacy "send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode." *Id.* § 2-203(a). Treacy was not able to directly hand the summons to Orlet because Orlet would not open the screen door after agreeing to accept service. Upon being informed that the paperwork involved Statia, Orlet became angry, suggesting that the process server deliver some choice words Orlet had for Statia. Orlet did not identify herself and instead informed Treacy that her name was Lilly. Treacy told Orlet that he knew she was "Christine Orlet" and that the papers were important and he would leave the papers on the step outside her screen door.

¶ 20    We must first determine if the "drop service" of leaving the summons at the screen door was sufficient. In granting Orlet's section 2-1401 petition, the trial court stated that "drop service" was insufficient. However, Illinois caselaw suggests that this type of personal service can be acceptable in situations where the party to be served is unwilling to accept the paperwork. As the appellate court stated in *Freund Equipment, Inc. v. Fox*, 301 Ill. App. 3d 163, 168 (1998), "no requirement exists that the process server physically place the papers in defendant's hand." Illinois is a state that accepts the " 'general method' of placing the papers 'in the general vicinity of the person to be served and announcing the nature of the papers.' " *Id.* (quoting *Currier v. Baldridge*, 914 F.2d 993, 995 (7th Cir. 1990)). In *Hatmaker v. Hatmaker*, 337 Ill. App. 175, 181-82 (1949), the court found that service was proper and effective when the papers were slid under the door when the defendant refused to open the door and the sheriff identified himself and stated that he

had summonses for the defendant. See also *In re Jafree*, 93 Ill. 2d at 455 (where the supreme court concluded that service was sufficient when the person to be served refused to accept the summons and the investigator placed the summons on the person's shoulder). Although these cases all involved service in Illinois, we note that section 2-208 requires service to be "in like manner" to in-state service. 735 ILCS 5/2-208(b) (West 2020). Thus if "general vicinity" service on a person attempting to evade personal service is appropriate in Illinois, "general vicinity" service outside Illinois is also appropriate. See *id.*

¶ 21    Orlet argues that section 2-208 mandates strict compliance in the service of an out-of-state party. We do not disagree. Orlet specifically challenges the affidavit Treacy prepared and filed with the court in his return of service. She correctly recites the language of section 2-208 mandating that the process server file an affidavit with the time, manner, and place of service and that the court may consider the "affidavit, or any other competent proofs," in confirming whether service was proper. *Id.* § 2-208(b). Orlet argues that the affidavit required by section 2-208(b) must be both signed *and* notarized. *In re Marriage of Lewis*, 213 Ill. App. 3d 1044, 1047 (1991). On this point, Orlet is mistaken. The Code does not mandate the use of a notary for certification on a return of service affidavit.

¶ 22    An Illinois Supreme Court rule and a Code section govern the affidavit requirements for a return of service. Illinois Supreme Court Rule 16 (eff. July 1, 2018) provides as follows: "Any affidavit filed under oath in any court of this State may be made by certification set forth in section 1-109 of the Illinois Code of Civil Procedure (735 ILCS 5/1-109)." Section 1-109 of the Code addresses the topic of verification by certification:

> "Unless otherwise expressly provided by rule of the Supreme Court, whenever in
>
> this Code any *** return or proof of service *** is required or permitted to be

9

verified, or made, sworn to or verified under oath, such requirement or permission is hereby defined to include a certification of such *** affidavit or other document under penalty of perjury as provided in this Section." 735 ILCS 5/1-109 (West 2020).

Section 1-109 provides that, when a return of service is certified pursuant to this statutory section, the following "several matters" shall be "stated positively or upon information and belief only, according to the fact[s]." *Id.* The requirements are as follows:

"The person *** having knowledge of the matters stated in a[n] *** affidavit or other document certified in accordance with this Section shall subscribe to a certification in substantially the following form: Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true." *Id.*

Finally, section 1-109 provides:

"Any *** affidavit[ ] or other document certified in accordance with this Section may be used in the same manner and with the same force and effect as though subscribed and sworn to under oath, and there is no further requirement that the *** affidavit[ ] or other document be sworn before an authorized person." *Id.*

¶ 23    Having reviewed the applicable procedural and Illinois Supreme Court rules on the issue of the certification required in a return of service, we turn to the return filed on September 2, 2020, by Treacy. Treacy was the process server in this case, and the statements in his return of service

10

are therefore within his personal knowledge. Treacy affirmed that at 1:50 p.m. on August 27, 2020, he "served a true and correct copy of the Summons and Petition for Confirmation of Arbitration Award ('Service Documents'), by personal service, by delivering said documents to Christine Orlet, at 11020 N Haight Avenue, Portland, OR 97217." Treacy certified that he was 18 years or older and that he was not a party to this action as mandated by section 2-208(b) of the Code (*id.* § 2-208(b)). With respect to the manner of the delivery, Treacy stated that "Christine was an unwilling recipient of the paperwork and I had to drop serve her at her front storm door." We find that Treacy adequately complied with the section 2-208(b) affidavit requirements in that he stated the time, manner, and place of service. *Id.* More specifically, we conclude that the form used by Treacy complies with the procedural requirements of section 2-203 (identification of Orlet as the individual served and the inclusion of the specific address where service was accomplished) and section 2-208 (affidavit listing the time, manner, and place of service) and that the return of service was valid.

¶ 24     We must also determine if Treacy's return of service affidavit is in a form "substantially" like that required by section 2-208(b). In his affidavit, Treacy stated: "I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury." We find that this statement is substantially similar to the requirements that the statement be made "[u]nder penalties as provided by law," that the statement is "true and correct," and that it otherwise is made "on information and belief." *Id.* § 1-109.

¶ 25     "In Illinois, the process server's return affidavit is *prima facie* evidence of proper service, and the affidavit of service should not be set aside unless impeached by 'clear and convincing evidence.' " *Illinois Service Federal Savings & Loan Ass'n of Chicago v. Manley*, 2015 IL App

11

(1st) 143089, ¶ 37 (citing *Paul v. Ware*, 258 Ill. App. 3d 614, 617-18 (1994), and *In re Jafree*, 93 Ill. 2d at 453). Having found that the return of service and affidavit prepared by Treacy constituted *prima facie* proof of service, the burden to rebut the presumption of service of process is transferred to Orlet. To rebut the presumption, clear and convincing evidence is required. *In re Jafree*, 93 Ill. 2d at 453. Uncorroborated accounts of how the party was or was not served are insufficient; rather "to impeach the affidavit of service, the defendant needs affirmative evidence." *Manley*, 2015 IL App (1st) 143089, ¶ 37. Orlet's argument is simply that she was not properly served because the documents were left on her front porch. As we have already concluded that the drop service in this unique factual situation satisfied the service of process requirements and as Orlet makes no additional affirmative arguments challenging service, we find that Orlet's argument is insufficient to rebut the presumption of service of process. See *id.* ¶ 39 (where the party contesting service alleged that she was not served, that she lived elsewhere, and that she never saw the process server, these allegations were insufficient to overcome the presumption that service was proper).

¶ 26    We also find support for the validity of Treacy's personal service of Orlet in his court testimony. On July 14, 2022, the trial court held its hearing on Orlet's motion to vacate the default judgment. Treacy appeared in court via Zoom and testified under oath. Orlet was also present at the hearing via Zoom but did not testify. Treacy testified to his numerous attempts to serve Orlet and to the methods utilized by Christine Orlet and her daughter Lilly Orlet to evade service. Treacy explained that, when he receives a file, he does basic preparatory research to "figure out who the person is we're trying to serve." His research includes efforts to locate a photograph of the person to be served. In doing his research, Treacy testified that he located a photograph on the Internet of Christine and her two daughters. Treacy testified that the photograph of Lilly matched the

12

individual he spoke to in January 2020, who denied that she knew Christine Orlet but stated that she used to live in that condo. Before Treacy attempted service again, Orlet called his office to complain about his interaction with Lilly during a service attempt and stated that she had previously met him. From those conversations, Treacy confirmed that the neighbor next door to Lilly Orlet was Christine Orlet. From Orlet's phone calls, Treacy was also able to identify her voice. Treacy testified that, during his conversation with Orlet on August 27, 2020, at her condo, he recognized her voice from her phone calls and recognized her face from her photographs online. Statia's attorney asked Treacy if he saw Orlet on the Zoom screen during the court hearing, and he answered affirmatively. The attorney then asked Treacy if the woman on Zoom was the same woman with whom he had the conversation through the screen door on August 27, 2020. Treacy responded, "That's exactly her. She looks the exact same."

¶ 27    Considering the evidence in the case and the applicable rules and caselaw regarding personal service outside of Illinois, we conclude that the "drop service" just outside Orlet's screen door was appropriate under the circumstances. The facts establish that Orlet was making concerted efforts to evade service of process—a practice that Illinois courts do not condone. Treacy was able to identify Orlet on the date of service by recognition of her voice from her phone calls to his office and recognition of her face from her online photographs. Although she did not confirm her identity to Treacy, the identification made by Treacy was sufficient under these circumstances. Orlet opted not to testify at her hearing and did not dispute that she had been served on August 27, 2020, and thus, she failed to rebut the presumption that she was properly served.

¶ 28    As stated earlier in this opinion, we find that the affidavit prepared in Treacy's return of service was legally proper. We note that, in ruling on the validity of the personal service, the trial court could have considered Treacy's return of service affidavit "or any other competent proofs."

13

735 ILCS 5/2-208(b) (West 2020). Treacy's testimony at the hearing provided ample "other competent proofs" that personal service was valid. At the hearing, Treacy testified that the woman on the Zoom screen identified as Christine Orlet was the same woman he personally served on August 27, 2020.

¶ 29    We find the affidavit on the return of service and "other competent proofs" established that Orlet was personally served and that the trial court had personal jurisdiction over her. Accordingly, we find that the trial court's order granting Orlet's section 2-1401 motion and vacating Statia's default judgment was erroneous. See *Protein Partners, LLP*, 407 Ill. App. 3d at 716 (citing *Vincent*, 226 Ill. 2d at 18). We also conclude that Statia's appeal of the trial court's denial of his motion to dismiss Orlet's motion to vacate is moot.

¶ 30                                  III. Conclusion

¶ 31    For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby reversed and the cause is remanded.

¶ 32    Reversed and remanded.

14

*Statia v. Orlet*, 2023 IL App (5th) 220731

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 20-LM-645; the Hon. Kevin T. Hoerner, Judge, presiding. |
| **Attorneys for Appellant:** | Donna Morrison Polinske, of Edwardsville, for appellant. |
| **Attorneys for Appellee:** | Timothy C. Sansone and Michael Lecinski, of Sandberg Phoenix & von Gontard P.C., of St. Louis, Missouri, for appellee. |